| | |
|---|---|
| In re<br><br>Cedar Haven Acquisition, LLC,<br><br>      Debtor. | Chapter 11<br><br> Case No. 26-bk-00118-HWV<br><br> **Hearing Date: March 17, 2026 at 10:00am**<br>**Obj. Deadline: March 12, 2026**<br><br>**Re: D.I. 120** |

**OBJECTION OF THE UNITED STATES TRUSTEE
TO DEBTOR'S MOTION TO SET SALE PROCEDURES
AND APPROVE SALE OF ASSETS**

Andrew R. Vara, United States Trustee for Region Three ("U.S. Trustee"), through his counsel, objects (the "Objection") to the Debtor's *Motion to Set Sale Procedures and Approve Sale of Assets* (the "Motion"), and in support of this Objection states as follows:

**PRELIMINARY STATEMENT**

1.      The Court has jurisdiction over the Debtor and its Estate.  While resolution of issues relating to the Estate may implicate property of third parties, the Court does not have jurisdiction over the sale of real property owned by a non-debtor regardless of whether such property will be sold to a purchaser who also seeks to acquire property of the Estate.  The Court should not approve any sale procedures that require it to exercise jurisdiction over non-estate property, or so inextricably require a sale of the Debtor's Assets to be subject to conditions relating to the disposition of non-estate property.

2.      The information provided by the Debtor in the Motion and other related pleadings raise serious questions that the proposed process and other unusual aspects of the transaction, taken as a whole, will chill bidding and ensure that a transaction to the stalking horse bidder will

close.  In particular, the Debtor requests Court approval of a requirement that any interested party submit bids for both the Debtor's Assets and the non-Debtor Real Property.  The relief requested also requires overbids to include enough to satisfy the stalking horse bidder's breakup fee between it and the non-debtor owner of the Real Property.  The Motion also includes ambiguous language for the prepetition secured and DIP Lender, Arba, to credit bid the full amount of its claims while not distinguishing between claims that are secured by a lien on the Debtor's property, and potential unsecured claims included in the Debtor's schedules.

3.      On the facts and circumstances in this case, in order to ensure continued operation of the Debtor's facility, and proper care of the patients that reside there, the Court should require procedures that allow for an open and transparent sales process where all serious bids are considered, and not allow non-debtor parties to protect their interests at the expense of the Estate.

## JURISDICTION

4.      This Court has jurisdiction to hear the Motion and this Objection.

5.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys. Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by the Motion and this Objection.

## BACKGROUND

### Filing of the Case and Governance Structure

2

6.     The Debtor encountered financial distress in 2025, resulting in a delinquency of over $1,000,000.00 for rent owed to 590 South 5th Avenue, LLC, (the "Landlord").  *See In re Cedar Haven Acquisition, LLC*, Case No. 1:26-bk-00118-HWV [D.I. 13] *Debtor's Motion Pursuant to Section 363(b) of the United States Bankruptcy Code to Retain Michael F. Flanagan and Flanagan & Associates, LLC to Manage the Affairs of the Debtor as of the Petition Date* (the "Flanagan Employment Motion") at ¶ 3-4.  The Landlord commenced a proceeding in the Court of Common Pleas of Lebanon County, Pennsylvania, for the appointment of a receiver, and Mr. Flanagan was appointed as the Receiver on October 30, 2025.  *Id.* at ¶¶ 4-5 & Exhibit A.

7.     The Receivership Order states, "[t]he Receiver is appointed solely for the benefit and protection of the rights and interests of Plaintiff, and all actions of the Receiver pursuant to this Order shall be for the benefit and protection of Plaintiff."  Flanagan Employment Mot. Ex. A. at ¶ 3. The Receivership Order included a provision limiting the Receiver's duty to only the Property and Receivership Estate, and affirmatively states the Receiver does not have "any affirmative duty to act on behalf of or defend Defendant."  *Id.* at ¶ 20.

8.     The Receivership Order included authorization to file a bankruptcy petition, at Paragraph 7.m. Flanagan Employment Mot. Ex. A at ¶ 7.m. ("The Receiver is also authorized to seek relief from and protection from creditors of Defendant by institution bankruptcy proceedings of behalf of Defendant [sic] and to obtain a free and clear order to support change of ownership to operate the Property").

9.     On January 16, 2026, the Receiver filed a chapter 11 petition for the Debtor in the Middle District of Pennsylvania.  Case No. 1:26-bk-00118-HVW [D.I. 1].  The Petition was signed by Mr. Flanagan in his capacity as Receiver.  *Id.* at p. 5.

10.     The Debtor operates a skilled nursing facility, in Lebanon County, Pennsylvania,

which as of the petition date, has in excess of 350 residents.  *See* [D.I. 9] at ¶ 2.  Fremont Lake LLC sold its interest in its loan to the Debtor to the Arba Group ("Arba") on December 30, 2025. [D.I. 9] at ¶¶ 4-5.

11.     Arba is an affiliate of the Landlord.  Arba extended an additional $450,000.00 to the Debtor prepetition.  [D.I. 9] at ¶ 6.  Arba and the Debtor sought and received approval of additional postpetition DIP Financing in an aggregate amount of up to $2,000,000.00. [D.I. 96].

12.     On January 26, 2026, the U.S. Trustee filed a motion seeking the appointment of a chapter 11 trustee.  [D.I. 24].  On February 10, 2026, the U.S. Trustee and the Debtor as represented by the Receiver and proposed counsel agreed to a stipulation regarding the appointment of a chapter 11 trustee (the "Trustee Stipulation").  [D.I. 62].  On February 11, 2026, the Court entered an order approving the Trustee Stipulation.  [D.I. 66].  On February 13, 2026, the U.S. Trustee appointed Leon P. Haller as Chapter 11 Trustee, ("Trustee Haller"). [D.I. 73].

### The Motion and Proposed Sale

13.     On March 2, 2026, the Debtor through special counsel, filed the Motion.  [D.I. 120].  The Motion sets forth that Trustee Haller intends to execute an agreement (the "Agreement") with MDA Capital Group, LLC ("MDA") to sell the Debtor's Assets. [D.I. 120 at ¶ 7].  MDA's affiliate, The Priority Group, was hired by the Receiver prepetition to assist with the management of the Debtor's facility.  *Id.* at ¶ 8.  The Landlord is entering a Purchase and Sale Agreement (the "Real Estate Agreement") to sell the Real Property to an affiliate of MDA. *Id.* at ¶ 10.  The Motion proposes a total purchase price for the Real Property and Debtor's Assets of $27,000,000.00, which is the appraised value of the Real Property.  *Id.* at ¶ 11.

14.     The Agreement was not attached to the Motion, but is presented as a stalking

horse offer. *See id.* at ¶ 26. The Debtor has retained Tower Partners, LLC to serve as Broker, and Tower has also been engaged by the Landlord to sell the Real Property. *See* [D.I. 122]. The Motion seeks entry of a proposed order (the "<u>Proposed Order</u>"). [D.I. 120-2]. The Proposed Order provides, "Arba shall have the right to bid all or any portion of its allowed, undisputed claim for any of the Sale Assets. Nonetheless, if Arba is the Winning Bidder, costs of the sale allocated to the buyer, if any, must be funded in cash by Arba at closing." D.I. 120-2 at ¶ 3.g. It also provides:

> Any purchaser of the Assets must also provide a qualified offer for the Real Property utilized by the Debtor at 590 South 5th Avenue, Lebanon, Lebanon County, Pennsylvania (the "Real Property"), which must be in excess of $27,900,000.00. All bids shall be for the Real Property and Personal Property as a whole, with an allocation of the proposed consideration between the Real Property and Personal Property.

*Id.* at ¶ 3.k.

15.     The Proposed Order also includes a provision that allows MDA to seek approval of a Breakup Fee for the Real Property, and seek to credit bid its Bid Protections. *Id.* at 3.o.

16.     A revised form of Notice relating to the Motion was filed on March 3, 2026. [D.I. 121]. Such notice may still be inaccurate to the extent it contains provisions subject to the objections herein.

**ARGUMENT**

**The Motion Should Not Be Approved Without Revisions to Untether Sale of the Debtor's Assets from Sale on Non-Debtor/Non-Estate Property**

17.     It is imperative that the Debtor complies with the requirements of 11 U.S.C. §363 and the Third Circuit's requirements for Chapter 11 pre-confirmation sales of substantially all of the debtor's assets set forth in *In re Abbotts Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986). For

5

example, in *Abbots Dairies*, the Third Circuit Court of Appeals expressed concern that Section 363 sales should not be used to circumvent the protections afforded to creditors under the plan confirmation process and Section 1129 of the Bankruptcy Code. *Abbott's Dairies*, 788 F.2d at 150. The Third Circuit held that the "good faith" requirement of a Section 363 sale should be used as assurance that a debtor does not, by means of an asset sale, abrogate the protections afforded to creditors and shareholders by Section 1129 of the Bankruptcy Code and the plan confirmation process. *Id.* at 150. Even those cases that require only a "good business justification" to approve a sale of substantially all of the estate's assets expressed concern that courts not adopt a "construction of § 363(b) [that] swallows up Chapter 11's safeguards." *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983). Thus, this Court needs to (i) find that there is a good faith purpose behind the sale, (ii) ensure that the sale protects the estate, creditors and other parties-in-interest and (iii) make certain that the record is complete with admissible evidence in order to approve the sale. *See In re Exaeris, Inc.*, 380 B.R. 741, 746 (Bank. D. Del. 2008).

18. The Debtor must provide evidence that the sale is for fair value and that a good business reason exists. *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). While preservation of the going-concern operations and uninterrupted care of the residents at the Debtor's facility will likely satisfy that a good business reason exists, the procedures contemplated by the Motion leave many open questions as to whether the sale will be for fair value. The Proposed Order requires that any potential purchaser of the Debtor's Assets, also bid on the Real Propoerty. [D.I. 120-2 at ¶ 3.k.]. The Proposed Order also seeks to impose benefits for MDA on account of its offer to buy the Real Property owned by the Landlord, despite that being property outside of the Court's Jurisdiction and the Debtor's Estate. *See id.* at ¶ 3.o.

6

19.     The Court must determine that the proposed sale and the attendant sale procedures will bring the best and highest price for the Debtor's assets.  The Debtor must show that the assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price.  There should not be any express limitation on otherwise financially capable parties to transact with non-debtor parties in order to provide the best value for the Debtor's Assets.

20.     The Court must also find that the sale is free of any collusion.  The relationship to the purchaser, any connections to the Landlord and Arba must be fully disclosed and evaluated, including any employment agreements or other agreements or understandings.  *See In re Abbotts Dairies, Inc.*, 788 F.2d at 147.  The procedures must not be so restrictive that otherwise value maximizing bids for the Debtor's assets are rejected because those bids do not suit the interests of the Landlord, Arba, and the proposed Stalking Horse.  The proposed sale must satisfy the *Abbotts Dairies* requirements and comply with Fed. R. Bankr. P. 6004 so that the United States Trustee, the Court, creditors and other parties have the ability and opportunity to evaluate the proposed transaction's *bona fides* and determine that the sale is in the creditors' best interests and complies with applicable law

21.     Courts have previously noted, pre-plan sales of all or substantially all of a debtor's assets "requires a bankruptcy court's careful review." *In re Exaeris, Inc*., 380 B.R. 741, 744 (Bank. D. Del. 2008). The Debtor and the proposed purchaser and/or their affiliates, must prove by credible evidence that the transaction is proposed in "good faith" and that it is an arms-length transaction.  The only documentation available suggests that the Landlord and Arba prefer MDA's bid because it also results in a sale of the Landlord's property, and the requested Proposed Order seek to require any potential bidder for the Debtor's Assets to commit to the same structure.  Such

7

restrictions are not in the best interests of the estate, as it is conceivable a party may want to acquire the Debtor's interest to operate the facility, but may not be interested in acquiring the Real Property as well.

22. Evaluation of break-up fees or expenses requires that the fees be actually necessary to preserve value of the estate. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018). In *O'Brien*, the Third Circuit "rejected application of a business judgment rule, under which a requested termination fee would be approved if the debtor had a good faith belief that the fee would benefit the estate." *In re Energy Future Holdings Corp.*, 904 F.3d at 313.

23. To the extent the Motion seeks a Breakup Fee for MDA on its proposed purchase of the Real Property, such Bid Protection is inappropriate and contrary to applicable law. The Real Property is not property of the estate, and a bid protection relating to it cannot be "actually necessary" to preserve value of the Estate. *O'Brien* 181 F.3d at 535. Such a bid protection is further not a lien secured by property, and as a result MDA cannot under any circumstance credit bid such a protection, even if the Court was able to grant the same. "[C]ourts do not have the authority to create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code." *See Energy Future Holdings Corp.*, 904 F.3d at 313 (quoting *O'Brien*, 181 F.3d at 532) (quotation marks omitted).

24. The U.S. Trustee reserves any and all duties, obligations and rights to, *inter alia*, revise, modify, supplement or otherwise amend this Objection or take any other actions as deemed necessary.

8

**CONCLUSION**

WHEREFORE, the U. S. Trustee respectfully requests that this Court sustain this Objection to the Motion, and such other relief as the Court deems just, fair, and equitable.

Dated: March 12, 2026

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Regions 3 and 9**

**Joseph P. Schalk**
**Acting Assistant United States Trustee**

By: */s/ Timothy J. Fox*
Timothy J. Fox, Jr., Esq.
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
Email: Timothy.Fox@usdoj.gov

9