| | | |
|---|---|---|
| IN RE: | : | Case No. 1:26-bk-00118-HWV |
| CEDAR HAVEN ACQUISITION, LLC, | : | |
| Debtor | : | Chapter 11 |
| | : | |
| CEDAR HAVEN ACQUISITION, LLC, | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| 590 SOUTH 5TH AVENUE, LLC, | : | |
| CAPITAL FUNDING, LLC, | : | |
| RETIREMENTHOME TV CAPITAL, | : | |
| THE ARBA GROUP, INC., | : | |
| SOUTH LEBANON TOWNSHIP, | : | |
| LEBANON COUNTY TAX CLAIM | : | |
| BUREAU, CORNWALL-LEBANON | : | |
| SCHOOL  DISTRICT | : | |
| Respondents | : | |

**ORDER APPROVING SALE OF ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS**

This matter is before the Court on the Notice and Motion (the "Motion") of Cedar

Haven Acquisition, LLC(the "Debtor") for entry of an order authorizing sale of the

Debtor's Assets[1], free and clear of all liens, claims, encumbrances and other interests, and

granting related relief pursuant to Sections 105, 363(b), (f), (k), (m) and (n), and 365 of

---

[1] For the avoidance of doubt, the term "Assets", as used throughout this Order, shall refer to assets of the Debtor only, and shall not extend to or include assets owned by any non-Debtor affiliate of third party.

Title 11 of the United States Code ("Bankruptcy Code" or "Code") and Rules 2002, 6004, 6006, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules).[2]

The Court has considered the Motion and the matters reflected in the record of the hearings held on the Motion. It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion, the Motion to Approve Bid Procedures (the "Procedures Motion") and this Court's hearing thereon has been provided to all interested parties and upon any entity that may assert a lien or interest in the Assets, and such is due and sufficient in all regards; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtor's bankruptcy estate and the creditors thereof; and good and sufficient cause exists for such relief.

**THE COURT FINDS AND CONCLUDES THAT:**

A.      The Trustee is a duly appointed Chapter 11 Trustee for the Debtor under Chapter 11 of the Bankruptcy Code.

B.      The relief requested in the Motion is sought pursuant to applicable substantive and procedural law, including Code Sections 105, 363(b), (f), (k), (m) and (n).

C.      This Court has jurisdiction over the Debtor, over all of Debtor's assets wherever located, and over all creditors of the Debtor. This Court has jurisdiction to hear and to rule upon the Motion, and the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[2] All capitalized terms used herein not otherwise defined have the meanings ascribed to them in the Motion

D. Notice regarding the Motion, Procedures Motion and the hearings thereon has been due and sufficient in content, timing, and service in accordance with the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the certificates of service filed with the Court, and based on the record before this Court, proper, timely, adequate and sufficient notice of the Motion, the hearings regarding the Motion, and the proposed transfer of the Assets therein referenced, has been provided to all creditors and interested parties in the Debtor's above-referenced Chapter 11 case. Such notice was good and sufficient and appropriate under the particular circumstances in accordance with Code Sections 102(1) and 363, and Bankruptcy Rules 2002, 6004, 9013, and 9014, and no other or further notice of the proposed sale, the Motion, or the Hearing is required.

E. Reasonable opportunity to object to, or be heard regarding, the relief requested in the Motion has been afforded to all interested persons and entities, including but not limited to all creditors and all parties who claim interests in or liens against the Assets.

F. The sale of the Assets was conducted at arms' length and following an auction, Cedar Haven Healthcare Center LLC ("Buyer") provided the highest and best offer, without collusion and in good faith. Buyer is a good faith purchaser in accordance with Bankruptcy Code Section 363(m) and is entitled to all of the protections afforded thereby. Neither the Debtor nor Buyer have engaged in any conduct that would cause or permit any part of the proposed sale to be voided (or the validity of the sale affected) under Code Section 363(n) or any other provisions of the Bankruptcy Code. The good faith of Buyer is evidenced by, among other things, the following facts: (a) the Agreement is the

product of arm's length negotiations between Debtor and Buyer; and (b) all payments to be made in connection with the contemplated transaction have been disclosed.

G.     The relief sought in the Motion is in the best interest of this estate, its creditors, and all parties in interest.

H.     The Trustee advanced sound and sufficient business justifications and it is a reasonable exercise of the Debtor's business judgment for Debtor to consummate the transaction contemplated in the Motion (the "Sale Transaction").

I.     The consummation of the Sale Transaction is properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Code Sections 105(a), 363(b), 363(f), 363(k), 363(m) and 363(n), and all of the applicable provisions of such sections have been complied with in respect of the Sale Transaction.

J.     This Order constitutes a final Order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and to any extent necessary, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

K.     The Debtor's secured creditor, The Arba Group ("Arba") consents to the sale set forth in the Motion.

**THEREFORE IT IS ORDERED THAT:**

1.     The Findings of Fact set forth above are ratified and adopted as findings of the Court.

2.     Any and all objections to the Motion are, to the extent not withdrawn or otherwise resolved as reflected in this Order, overruled. Those parties that did not

object, or who withdrew their objections, to the Motion are deemed to have consented to the sale of the Assets pursuant to Bankruptcy Code Section 363(f)(2). The Debtor, as Seller, is authorized to perform the relevant or appropriate conveyances and duties referenced in the Motion.

3. Each of the Agreement, bills of sales, releases, other agreements, certificates, assignments, documents and instruments executed in connection therewith, and all of the other actions contemplated by the sale of the Assets are approved and authorized in their entirety, except as may be modified in this Order.

4. Debtor is authorized, pursuant to Code Sections 105(a), 363(b), 363(f), 363(k), 363(m) and 363(n) to perform all of its obligations under the Agreement.

5. As provided herein the sale is approved pursuant to Code Sections 105(a), 363(b), 363(f), 363(k), 363(m) and 363(n).

6. Any other provisions of the Bankruptcy Code governing the sale free and clear of all liens, claims, encumbrances and other interests, outside the scope of the Debtor's ordinary course of business, have been satisfied.

7. Counsel to the Debtor shall be provided with a draft of the Settlement Statement prior to closing.

8. Debtor is authorized to execute, deliver, exchange, and perform under the Agreement and all other documents necessary or appropriate to consummate sale and transfer of the Assets to the Buyer.

5

9. 590 South 5th Avenue, LLC's ("590"), the owner of the Real Property where the Debtor operates, proposal of the payment of funds from the Real Property sale in the amount of $5,250,000.00 (the "Real Property Payment") is fair and reasonable.

10. Arba agrees that no portion of the Real Property Payment will be utilized to pay its secured claim.

11. Pursuant to the Agreement, the Trustee, as "Seller", will pay costs and expenses associated with the sale of the Assets at closing from the sale proceeds and the Carveout, as follows:

a. All commissions owed to Tower will be paid from the Real Property proceeds, in the amount set forth in Tower's agreement with 590.

b. Any notarization or incidental filing charges required to be paid by Debtor as seller.

c. All other costs and charges apportioned to Debtor, as seller, under the documents contemplated thereby.

d. All costs associated with the preparation of the conveyance instruments and normal services with respect to closing, including payment of a total of $100,000.00 on account of legal fees and expenses owed to Cunningham, Chernicoff & Warshawsky, P.C., Debtor's counsel, in connection with implementation of the sale, the presentation and pursuit of this Motion, consummation of the sale, and otherwise in connection with this case. All fees and expenses payable to Cunningham, Chernicoff & Warshawsky, P.C. shall be subject to such approval as the Bankruptcy Court may require. If any fees and/or expenses have not been approved by the Bankruptcy Court at the time of closing and approval thereof is necessary, then an estimated sum shall be escrowed at closing pending application to the Bankruptcy Court for approval of such fees. Upon approval of any fees and expenses by the Bankruptcy Court, funds in such amount may be distributed from escrow.

e. Payment of all past due fees owed to the Office of the U.S. Trustee, as well as any fees owed as a result of the transaction set forth in this Motion.

6

12.     The net proceeds of the Real Property Payment, after costs of sale, from the sale of Assets will be held for distribution pursuant to further Order of the Court, to administrative and unsecured claims pursuant to the priority set forth in the Bankruptcy Code.  Administrative costs of operation will, to the extent possible, be paid from the collection of accounts receivable of the Debtor. Any administrative claims that are unpaid from the Debtor's accounts receivable and operations may be paid from the Real Property Payment as subject to the determination of the Trustee and Order of the Court other than from the costs and payments set forth in Paragraph 11 above. Arba's secured claim shall be paid from the accounts receivable of the Debtor.

13.     Nothing in this Order shall prejudice or otherwise affect the rights, claims, or defenses of patients or residents of the Facility whose agreements are being purchased pursuant to Section 1.1(a)(xi) of the Agreement. Nothing in this Order shall prejudice or or otherwise affect the rights, claims, or defenses of patients or residents of the Facility with respect to the Resident Trust Funds or Resident Deposits (as those terms are defined in Section 1.4 of the Agreement). All of the foregoing rights, claims and defenses of patients and residents of the Facility are fully reserved and preserved.

14.     Nothing in this Order is approving any tax exemption under Bankruptcy Code Section 1146(a).

15.     No break-up fee is being paid from the bankruptcy estate or the Assets.

16.     The Trustee may transfer the Assets to the Buyer or its assignees free and clear of Claims and encumbrances (except as otherwise provided in this Order) because one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)–(5) and

7

particularly Code Section 363(f)(2) and Section 362(f)(3) have been satisfied. Each creditor or other person or entity asserting a Claim or Encumbrance (as defined below) in the Assets (i) has, subject to the terms and conditions of this Sale Order, consented to the sale of the Assets or is deemed to have consented to the sale of the Assets, or (ii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of Claims or Encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Motion are deemed to have consented to the Motion and the sale of Assets pursuant to section 363(f)(2).

17. As a condition to purchasing the Assets pursuant to the Agreement, the Buyer requires that the Assets be transferred free and clear of all Claims and Encumbrances (other than Assumed Obligations, or as otherwise provided in this Order), and free from any successor liability claims, including, without limitation, (i) any identified Medicaid overpayments and potential nursing facility assessments (including as provided in 62 Pa. Stat. Ann. §§ 801-A, *et seq.*) (the "Department Assessments") due to the Commonwealth of Pennsylvania Department of Human Services ("DHS"); (ii) any amounts owed to, or required to be paid to, the Commonwealth of Pennsylvania Department of Health ("DOH"); and (iii) any other amounts owed by the Debtors or their affiliates to the Commonwealth of Pennsylvania or any other Governmental Authority of the United States and as may be limited by this Order.

18. Nothing in the Motion, this Order or any implementing sale document (collectively the "Documents"), shall:

8

a.  authorize the assumption, sale, assignment or other transfer to the Buyer of any (i) federal grants, (ii) federal grant funds, (iii) federal contracts between the Debtor and the United States or its agencies, including but not limited to agreements, contracts, awards, licenses, certificates, authorizations, and applications, (iv) state contracts between the Debtor and the Commonwealth of Pennsylvania or its agencies, including, but not limited to, agreements, contracts, awards, licenses, certificates, authorizations and applications (v) federal property, including but not limited to, any intellectual property and patents belonging to the United States or any of its agencies or components thereof, (vi) federal leases, or (vii) other interests belonging to the United States, the Commonwealth of Pennsylvania or their agencies (collectively, "Government Interests") without compliance by the Debtor and the Buyer with all terms of the Government Interests and with all applicable legal requirements, obligations, and approvals under non-bankruptcy law;

b.  be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Government Interests;

c.  waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data;

d.  affect the setoff or recoupment rights of any governmental unit (as defined in 11 U.S.C. § 101(27)) and such rights are preserved, subject to Court approval as may be necessary, as to setoffs;

e.  authorize the sale, assumption, assignment or other transfer of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable requirements, obligations and approvals under non-bankruptcy laws;

f.  release, nullify, preclude or enjoin the enforcement of any police or regulatory power;

g.  confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

h.  divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order;

9

i. permit the Buyer to use any Medicare provider number or Medicare provider agreement of the Debtor, absent approval by DOH, DHS, and the United States Department of Health and Human Services ("HHS"), acting through the Centers for Medicare and Medicaid Services ("CMS"), of any and all Change in Ownership ("CHOW") applications;

j. require CMS or DHS to issue Medicare or Medicaid reimbursements to any individual or entity other than the Old Operator prior to the completion of a CHOW; or

k. exclude, extinguish, exculpate or release any obligation or liability associated with a Medicare or Medicaid provider agreement, as required pursuant to the Medicare or Medicaid Act and Medicare or Medicaid regulations, including without limitation, any pre-CHOW overpayments, civil penalties, or other enforcement remedies, liabilities arising from the Old Operator's compliance history, and all other obligations and liabilities associated with such provider agreement, and any transfer of a Medicare or Medicaid provider agreement shall be subject to all such liabilities and obligations associated with the provider agreement.

To the extent that this Order is inconsistent with the Operations Transfer Agreement (or any amendments thereto), Asset Purchase Agreement (or any amendments thereto), any prior order or pleading with respect to the Motion in this Chapter 11 case, the terms of this Order shall control.

19. The Buyer would not have entered into the Agreement and will not consummate the sale of the Assets, thus adversely affecting the Debtors' estates, if the transfer of the Assets is not free and clear of all Claims and Encumbrances (other than Assumed Obligations) or if the Buyer was or could be liable for any Claims or Encumbrances against the Debtors or the Assets (other than Assumed Obligations).

20. The Debtors have full power and authority to sell and deliver the Assets and execute and perform under, the Agreement and any other documents necessary or appropriate to consummate the sale of the Assets, as approved herein. All actions

10

contemplated by the Agreement have been duly and validly authorized by all necessary actions of the Debtors. No further consents or approvals are required for the Debtors to consummate the sale of the Assets, except as otherwise provided in the Agreement.

21.     The sale of the Assets to the Buyer under the Agreement will be a valid, legal, and effective transfer of the Assets and will vest the Buyer with all right, title, and interests of the Debtors in and to the same, free and clear of all Claims and Encumbrances (other than any Assumed Obligations).

22.     The Agreement and the sale of the Assets do not constitute a *sub rosa* chapter 11 plan. The Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

23.     Subject to the distributions set forth in this Order, all Liens and Claims shall be transferred and attach, with the same validity, enforceability, priority, force and effect that they now have as against the Assets, to the net proceeds obtained for the Assets, subject to the rights, claims, defenses and objections of the Debtor and all interested parties with respect to such liens. This Order is deemed to operate as a release of all Liens and Claims when sale of the Assets occurs. If the proposed sale of the Assets fails to close for any reason, then such Liens and Claims shall continue against it unaffected by this Order. All holders of recorded Liens and Claims affecting the Assets are directed to prepare, and record promptly after the closing of sale of the Assets, releases of such Liens and Claims reasonably satisfactory to the Buyer.

24.     Nothing herein shall work to the prejudice of the rights of the Trustee or the Debtor or any party-in-interest to object to any claim(s) filed in this bankruptcy case.

11

25. Except to the extent that the Liens and Claims attach to the sale proceeds as provided in this Order, this Order is and shall be effective as a determination that, as of the Closing Date, all Liens and Claims existing or that may be raised as to the Assets, except for easements of roads, privileges or rights of public service companies, if any, agreements or like matters of record, and easements or restrictions visible upon the ground, prior to such closing have been unconditionally released and terminated.

26. This Order is binding on all filing agents and officers, all escrow agents, all title agents, all title insurance companies, all administrative agencies, all government departments and units, all Secretaries of State, and all federal, state, or local (or subdivision thereof) officials and all other persons or entities who may be required by operation of law, or by the duties of their office or by contract, to accept, file, register, or otherwise record or release any documents or  instruments or who may be required to report or insure any title or state of title in, to, or as regards the Assets (all such persons or entities being "Recording Officers"). All recording Officers are authorized and specifically directed to strike recorded Liens and Claims against the Assets in conformity herewith.

27. The Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Agreement, all amendments thereto and any waivers or consents thereunder and of each of the agreements, instruments, and documents executed in connection therewith; (b) to enforce this Order and to bar the enforcement of any Liens and Claims or other liabilities, except as otherwise assumed, against Buyer or the Assets; (c) to compel delivery of the Assets to the Buyer; or (d) to interpret, implement, and enforce the provisions of this Order.

28.  This Order shall be effective immediately upon its entry, and the stay imposed by Bankruptcy Rule 6004 is declared inapplicable and waived.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: May 26, 2026

13